IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

| | |
|---|---|
| MCGUIRE MEMORIAL,<br><br>        Plaintiff,<br><br>vs.<br><br>TEAMSTERS LOCAL 261,<br>INTERNATIONAL BROTHERHOOD OF<br>TEAMSTERS,<br><br>        Defendant, | 2:24-CV-01729-MJH |

OPINION AND ORDER

Plaintiff, McGuire Memorial, brings the within action against Defendant, Teamsters Local 261, International Brotherhood of Teamsters, to vacate a labor arbitration award. (ECF No. 1). Teamsters now moves to dismiss McGuire's Complaint, and Teamsters has also filed counterclaim to confirm and enforce said labor arbitration award. (ECF Nos. 10 and 11). The matter is now ripe for decision.

Following consideration of McGuire's Complaint (ECF No. 1), Teamsters's Motion to Dismiss and Counterclaim (ECF Nos. 10 and 11), the respective briefs and replies (ECF Nos. 12, 13, 14, and 17), and for the following reasons, Teamster's Motion to Dismiss will be granted.

    I.    Background

Teamsters (or the Union) represents a bargaining unit of employees, who work for McGuire. (ECF No. 1 at ¶¶ 3-4). McGuire is a private, non-profit entity, which provides educational and residential services for individuals with intellectual and physical disabilities. *Id*. at ¶¶1, 2. In February 2023, Teamsters and McGuire negotiated a Collective Bargaining Agreement ("CBA") effective March 1, 2023 through February 28, 2026. *Id*. at ¶ 4. Said CBA

governs terms and conditions of employment for a bargaining unit of employees, represented by Teamsters, who work at McGuire. *Id*.

McGuire's Complaint seeks to vacate a November 23, 2024 arbitration award issued by neutral arbitrator Michelle Miller-Kotula. (ECF No. 1-2). Said arbitration stemmed from a wage grievance from employee, Sandy Shore. As a ten-year employee, Ms. Shore had been earning a "top rate" of $19.40 as a Direct Support Professional. In October 2023, Ms. Shore allegedly "bid down" from her higher rated job classification of Direct Support Professional to the contractual lower rated job classification of Support Staff, because it did not require the same degree of physical effort. (ECF No. 1 at ¶¶ 11-12). Ms. Shore was awarded the bid because of her seniority. *Id*. at ¶ 13. After being awarded the bid, McGuire informed Ms. Shore that her wage rate would be reduced to $15.00, which the Union contended was a "new hire" rate rather than the "current employee" top rate of $16.89 per hour in the Support Staff job category. (ECF No. 1-2 at p. 8)

McGuire alleges that, for the 2023 CBA, the parties did not negotiate or agree upon specific terms for the wage rate for any employee who decided to bid down for a position within the Support Staff classification. (ECF No. 1 at ¶ 14). McGuire maintains that the wage rate should be $15.00, as is provided for a new hire under the 2023 CBA. The Union maintains that Ms. Shore, a current employee, who bid down to the Support Staff position, should be paid $16.89 under the 2023 CBA.

Under the prior CBA, as a Direct Support Professional, Ms. Shore was earning the top rate wage of $19.40 per hour. Under the prior CBA, the top rate for Support Staff was $15.79 per hour. Under the 2023 CBA, the wage rate for current Support Staff employees was set at $16.79, and newly hired Support Staff wage rate was set at $15.00 per hour for 2023. The top

2

rate wage for Support Staff was eliminated under the 2023 CBA. The relevant language from Appendix A of the 2023 CBA provides:

**APPENDIX A**
**WAGE RATES**
**MAIN SITE DIRECT SUPPORT PROFESSIONALS, COMMUNITY HOME DIRECT SUPPORT PROFESSIONALS, MAINTENANCE AND SUPPORT STAFF**

No current employee receiving top rate will suffer a reduction in pay due to the limit numbers in the current agreement.

\*\*\*

All support staff employees currently being paid $15.79/hr shall receive $1.00/hour (new rate $16.79) to remain at $16.79 for 2023, $16.89 for 2024, and $16.99 for 2025. All newly hired support staff following ratification of the contract shall be paid in accordance with the above rates. The past contractual concept of a top rate for Support Staff is eliminated with the exception of currently employed top rate employees described above.

(ECF No. 11-1 at p. 39).

During the grievance process, the Union took the position that, as a current employee, who bid into the Support Staff position, Ms. Shore was not a "Newly Hired" employee; thus, she should not have been subject to the $15.00 per hour rate; rather, she should have received the base rate of $16.79, as was set for current support staff employees under the 2023 CBA. (ECF No. 1-2 at p. 2). McGuire argued that the 2023 CBA rate of $16.79 per hour only applied to then current Support Staff employees, who were earning the top rate as of the effective date of the 2023 CBA. McGuire maintained that, since Ms. Shore was not a current support staff employee on the effective date, she should have been treated as a new hire earning $15.00 per hour, notwithstanding that she subsequently bid into the Support Staff position. *Id*.

Arbitrator Miller-Kotula sustained the Union's grievance, and concluded that McGuire violated the 2023 CBA by paying Ms. Shore as a new hire rate rather than as a current support

staff employee as provided for under the 2023 CBA. (ECF 1-2). In particular, Abritrator Miller-Koutla found as follows:

> [T]he CBA language supports this position since the Support Staff employees on the rolls at the time of the CBA was agreed to were paid $15.79 an hour and received an additional one dollar per hour to change their rate to $16.79 for 2023, the rate of the top Support Staff. Since the grievant was already at the top rate in the Direct Support Professional position when she bid to the Support Staff position she should remain at the top rate and receive the rate the top rate Support Staff receives which is currently $16.89 an hour in 2024. She is not a newly hired employee to the Employer who would receive the $15 rate at the time she bid or $15.10 an hour at the time of the arbitration hearing, but would be considered by this arbitrator to be working in the same top rate status as the Support Staff who received the higher rate of pay. I understand the language eliminates the top rate for Support Staff. However, it does not eliminate the rate for the employees like the grievant who are currently employed at the top rate. The grievant in my opinion would be entitled to receive the top rate the same as the top rate employees currently receive. Thus, this arbitrator determines the grievant should receive the rate of $16.89 an hour which is the current 2024 rate when she is moved to this position.

*Id*. at p. 17. As a remedy, Arbitrator Miller-Kotula ordered McGuire to pay Ms. Shore the top rate of the Support Staff position when she returned to work and started working in that position. (ECF 1-2).

II. Discussion

Teamsters contends that McGuire's Complaint attempts to relitigate a final and binding arbitration decision. Further, Teamsters maintains that McGuire has not plausibly alleged that the Arbitrator's award did not draw its essence from the CBA. McGuire contends that the parties did not negotiate a wage rate for an employee who bids down to a lower classification, such that said wage rate is not within the CBA. Teamsters responds that, although the parties did not specifically negotiate a situation where an employee bids down, the parties did set forth specific wage rates applicable to then current employees working in specific positions. Teamsters maintains that the Arbitrator interpreted the terms of the CBA to decide which negotiated wage rate applied to Ms. Shore in her bid move to Support Staff.

4

Article 9 of the March 1, 2023 CBA, titled "Grievance Procedure", provides for a comprehensive contractual dispute resolution procedure culminating in arbitration that "shall be final and binding upon both the Employer and the Union." (ECF No. 11-1 at p. 8).

Under the Federal Arbitration Act, a district court may overturn an arbitrator's award only if the "award was procured by corruption," 9 U.S.C. § 10(a)(1), if the arbitrators were corrupt or guilty of misconduct, *id.* § 10(a)(2)-(3), or if "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made[,]" *id.* § 10(a)(4). An arbitrator exceeds her powers if her award fails to "draw[ ] its essence from the collective bargaining agreement." *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); *see Swift Indus., Inc. v. Botany Indus., Inc.*, 466 F.2d 1125, 1130 n.11 (3d Cir. 1972) (finding *Steelworker*'s principles consistent with 9 U.S.C. § 10(a)(4)). "It's a steep climb to vacate an arbitration award." *France v. Bernstein*, 43 F.4th 367, 377 (3d Cir. 2022).

Here, McGuire's arguments are unavailing.  Following a careful review of the pleadings and accompanying record below, and as discussed above, the Arbitrator clearly drew upon the "essence" of the CBA in deciding the grievance dispute between McGuire and the Teamsters relative to Ms. Stone's wage rate following her bid into the Support Staff role.  The 2023 CBA expressed that a current employee, receiving the top rate, would not suffer a reduction. (ECF No. 11-1 at p. 39).  The 2023 CBA differentiated between current support staff employees and newly hired support staff, and provided for different wage rates. Ms. Shore was a current employee of McGuire as of the effective date for the 2023 CBA. She also earned the 2023 CBA top wage rate, albeit in the Direct Support Professional category, at that time. When she was awarded the bid to reclassify her as Support Staff, she was not a new hire.  While the 2023 CBA has no

5

express language to address the precise circumstance of bid employment position changes for current employees, the Arbitrator's analysis and decision drew its essence from the language of the 2023 CBA.  Accordingly, this Court will not disturb said decision under the well-settled principles cited above.

Accordingly, Teamster's Motion to Dismiss will be granted.

III.   ORDER

Following consideration of the foregoing, it is hereby ordered that Teamster's Motion to Dismiss is granted.  McGuire's Complaint is dismissed.   The Court will schedule an initial case management conference in light of Teamster's Counterclaim and McGuire's Answer thereto.

DATED this 27th day of August, 2025.

BY THE COURT:

_____
MARILYN J. HORAN
United States Magistrate Judge